UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MARK ARZOOMANIAN,   Case No. 21-cv-6475

                Plaintiff,

                                          **AMENDED COMPLAINT**

   -against-

                                          **JURY TRIAL DEMANDED**

RICHARD "BO" DIETL,

                Defendant.
-----------------------------------------------------------x

     Plaintiff, Mark Arzoomanian ("Plaintiff" or "Arzoomanian"), by his undersigned attorneys, as and for his amended complaint against Richard "Bo" Dietl ("Defendant" or "Dietl"), alleges, upon knowledge as to himself and his own conduct, and on information and belief as to all other matters, as follows:

## NATURE OF THE CASE

     1.     This is an action for a declaratory judgment. By it, Plaintiff seeks a ruling that a two-sentence note which Plaintiff gave Defendant in December 2004 is unenforceable.

     2.     Plaintiff is a businessman who resides and maintains his office in the State of New Jersey. Defendant is a businessman who resides and maintains his office in the State, City and County of New York.

     3.     In or about 1985, Defendant, a former New York City detective, founded Beau Dietl & Associates ("BDA"). BDA claims it has grown to become one of the premier investigative and security firms in the nation.

     4.     Until recently, Plaintiff and Defendant had been close friends for decades. In December 2004, Plaintiff purchased a one-third stake in a placement agency, Resource Search Company d/b/a RSC Solutions ("RSC"). In a meeting held in New York, New York, Defendant told Plaintiff that he would "open his Rolodex" and steer clients and revenues to Plaintiff's new

1

business. Expressly relying on that promise, Plaintiff immediately wrote out a note, signed it and gave it to Defendant (the "December 2004 Note" or the "Note").

5. The December 2004 Note read in its entirety as follows:

> 12-6-04
>
> I Mark Arzoomanian promise Richard Dietl 5% of Resource Search Company at the sale.  Richard Dietl will get his pro rata share at the sale of the Company.
>
>                                                        Mark Arzoomanian
>                                                        /s/ *Mark Arzoomanian*

6. For a period of more than 16 years, Defendant never once made a claim under the Note and for good reason. Defendant never steered any business to RSC, and he knew it.

7. In and after May 2021, however, Defendant suddenly reversed field.  By letter dated July 22, 2021, an attorney for Defendant demanded that Plaintiff provide adequate assurance that Plaintiff will honor the terms of the Note.

8. However, the Note and the purported "promise" set forth therein are of no legal force and effect, for multiple separate, independent and sufficient reasons, to wit:

(a) If and to the extent Defendant claims, falsely, that Plaintiff gave Defendant the Note for something which Defendant did *prior to* December 6, 2004, the Note is unenforceable under the well-settled rule that past consideration cannot support a present promise;

(b) If and to the extent Defendant claims, falsely, that the Note was intended to reflect an intent to make a gift to Dietl, the Note is unenforceable under the well-settled rule that a promise to make a gift is unenforceable where, as here, the purported donee cannot plead or prove detrimental reliance on it; and

(c) If and to the extent Defendant admits that Plaintiff gave Defendant the Note in consideration for Defendant's promise to steer new clients and revenues to RSC, *i.e*., the actual

2

reason for the Note, the Note is unenforceable on account of Defendant's failure to steer any new clients and revenues to RSC.

9. In addition, instead of steering new clients and revenues to RSC, in or about 2010, Defendant formed his own, directly competitive, recruitment firm, Beau Dietl Consulting Services (BDCS).

10. Although Plaintiff vigorously denies that he and Defendant came to an enforceable deal, the formation of this competitive business by Defendant was a frank violation of the implied obligation of good faith and fair dealing instinct in any contract formed by the parties. Thus, even if Defendant could somehow overcome the defenses to the enforcement of the Note set forth above, and to be sure he cannot, whatever deal Defendant may claim was reached was, as a matter of law, rendered unenforceable by reason of Defendant's breach of the implied obligation of good faith and fair dealing, as outlined above.

11. There is thus a present, actual, ripe and otherwise justiciable controversy between the parties. Plaintiff is entitled to a declaratory judgment that the December 2004 Note is unenforceable.

## **THE PARTIES**

12. Plaintiff is a businessman who resides at 15 Rodney Place, Demarest, New Jersey 07627. He maintains his business office in Rockleigh, New Jersey.

13. Defendant is a businessman who (upon information and belief) resides at 1735 York Avenue, Apartment 29B, New York, New York 10128. He maintains his principal business office at 1 Penn Plaza, New York, New York.

## JURISDICTION AND VENUE

14. Jurisdiction herein is based on 28 U.S.C. § 1332(a) as Plaintiff and Defendant are citizens and residents of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) in that (a) a substantial part of the events giving rise to the claim in this action occurred in this judicial district and (b) Defendant resides in and regularly conducts business in this judicial district.

## FACTS

16. Effective December 8, 2004, Plaintiff purchased a one-third ownership stake in a placement agency, Resource Search Company, Inc. ("Resource Search Co.") which then and now does business under the name RSC Solutions ("RSC"). RSC offers temporary, temp-to-hire, and direct hire placements, specializing in filling information technology (IT), finance and accounting, and executive administrative positions for its clients.

17. When, on December 8, 2004, he purchased his stake in Resource Search Co., Plaintiff also purchased an option to buy out the two other owners of the company. In 2006, Plaintiff exercised that option. Today, Plaintiff owns approximately 77.32% of Resource Search Co.

18. Defendant, born December 4, 1950, is approximately 15 years older than Plaintiff.

19. By 2004, Defendant had significant name recognition and contacts, particularly in private investigations and the provision of building security services.

20. For years prior to 2004, Plaintiff and Defendant were close friends. Dietl's son would even humorously call Plaintiff his godfather. On December 6, 2004, Plaintiff and Defendant met in person in Defendant's office in New York, New York. Plaintiff was just about to

make his initial investment in Resource Search Co. In the course of the meeting, Dietl said he wanted to help Plaintiff in his new venture by "opening his Rolodex" and directing new clients and revenues to Resource Search Co. Plaintiff thought that giving Dietl an interest in the success of Resource Search Co. could be a great way to increase his new company's standing and revenues. Plaintiff was clear, however, that Defendant would never have an ownership interest in the company and would only get paid when, as and if Plaintiff ever sold the company to a third party. Defendant said that was fine with that arrangement, whereupon Plaintiff, without talking to a lawyer or anyone else, got a legal pad and wrote out, and gave Defendant, a note (the "December 2004 Note" or the "Note"), which Note said the following in its entirety:

12-6-04

> I Mark Arzoomanian promise Richard Dietl 5% of Resource Search Company at the sale. Richard Dietl will get his pro rata share at the sale of the Company.
>
> Mark Arzoomanian<br>/s/ *Mark Arzoomanian*

21.     Despite his promise to do so, Defendant did not, in fact, make even a single introduction which resulted in a new client, business or revenues for Resource Search Co.

22.     Instead, in or about 2010, Defendant formed *his own recruitment firm*, Beau Dietl Consulting Services (BDCS), as confirmed by BDA's website. According to BDA's website, BDCS engages in the following business: it "recruits temporary and permanent placements in the IT, Finance, and Business verticals for global leaders and Fortune 500 companies with clients such as JP Morgan Chase, Citibank and Ernst & Young to name a few."

23.     In other words, Defendant, through a company which *he* formed, became a direct and major competitor of RSC, in the exact same industry verticals. Per the BDA website, the

placement business which Dietl formed in 2010 remains a competitor of Resource Search Co. to this day.

24. For a period of more than 16 years, Dietl never made claim under the December 2004 Note and for good reason. Dietl had never successfully steered any business to Resource Search Co. -- and he knew it.

25. Starting in May 2021, however, Dietl, suddenly reversed field and begun to claim that he, Dietl, is entitled to share in the proceeds on any sale of Resource Search Co. These efforts culminated in a July 22, 2021 letter, transmitted by an attorney for Defendant, demanding that Plaintiff "provide … adequate assurance that [Plaintiff] will perform and honor the terms of the [December 2004 Note]." A true and complete copy of the July 22, 2021 demand letter, to which a true and complete copy of the Note is apparently attached, is attached hereto and incorporated herein by reference as **Exhibit A**.

26. However, the December 2004 Note and the purported "promise" set forth therein is of no legal force and effect, for multiple separate, independent and sufficient reasons.

27. First, under applicable New York law, it is well-settled that past consideration cannot, in general, support a present promise. *United Resource Recovery Corp. v. Ramko Venture Management, Inc.,* 584 F.Supp.2d 645, 656 (S.D.N.Y. 2008) ("The general rule in New York is that past consideration is not consideration, because the promise was not induced by the consideration"); *Korff v. Corbett*, 155 A.D.3d 405, 408 (1st Dep't 2017) ("generally, past consideration is no consideration and cannot support an agreement because the detriment did not induce the promise.  That is, since the detriment had already been incurred, it cannot be said to have

been bargained for in exchange for the promise") (citations omitted ). Therefore, if and to the extent Defendant claims, falsely, that Plaintiff gave Defendant the Note for something which Defendant allegedly did *prior to* December 6, 2004, the Note is unenforceable.[1]

28. Second, it is an equally well-settled principle of New York law that a promise to make a gift is unenforceable where, as here, the purported donee cannot conceivably plead or prove detrimental reliance on it. 62 N.Y.Jur.2d Gifts § 18 (May 2021 update) ("Since a gift is a wholly gratuitous thing, a promise to make a gift, if it really is such, is necessarily made without consideration"). Therefore, if and to the extent Defendant claims, falsely, that the Note was intended to reflect an intent to make a gift to Dietl, the Note would be unenforceable.

29. Third, as alleged above, Plaintiff prepared and gave Defendant the Note in reliance on Defendant's promise that he could and would steer new business and revenues to RSC. However, in material breach of that promise, Defendant never steered any business or revenue to RSC at all.

30. It is a well-settled principle of New York law that:

> "A party who materially breaches a contract may not seek to enforce other provisions of that contract. … Since a [party] asserting breach must show that it complied with its obligations under the contract in all respects, a party in material breach cannot establish a claim against the other party for breach of contract."

Glen Banks, 28 N.Y. Prac. Series, Contract Law § 17.13 (August 2020 update) (citing cases).

---

[1] Under NYGOL § 5-1105, past consideration is valid in New York if there is a writing signed by the party to be bound. *United Resource, supra*. However, "[f]or a party to recover pursuant to [§] 5-1105, the writing must contain an unequivocal promise to pay a sum certain, at a date certain, and must express the consideration for the promise." *United Resource, supra*. Here, Defendant cannot possibly avail himself of NYGOL § 5-1105 for the simple reason that the Note does not express any consideration running to Plaintiff for his promise *at all*.

31. As alleged above, Defendant materially breached the very promise which induced Plaintiff to give him the Note because, despite his promise to do so, Defendant never steered any client or revenues to RSC. Under well-settled New York law, because Defendant cannot possibly show that he complied with the promise which induced the Note, legally, Defendant is precluded from seeking to enforce it.

33. In addition, Defendant undercut and damaged Plaintiff's business by opening a direct competitor. By opening a direct competitor, Defendant willfully engaged in a course of conduct designed to deprive, and which did deprive, Plaintiff of consideration for which Plaintiff expressly bargained, thereby violating the implied obligation of good faith and fair dealing instinct in any contract that was formed by the parties. *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002) ("[i]n New York law, all contracts imply a covenant of good faith and fair dealing in the course of performance") (citations omitted). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *511 West*, *supra*. "While the duties of good faith and fair dealing do not imply obligations inconsistent with other terms of the contractual relationship …, they do encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *511 West, supra* (citations omitted). Thus, even if Defendant could somehow overcome the defenses to the enforcement of the Note set forth above, and to be sure he cannot, the Note was rendered unenforceable by reason of Defendant's formation and backing of a direct competitor to RSC in and after 2010. *511 West, supra*.

34. Moreover, Defendant is subjectively aware that the Note is unenforceable. On May 11, 2021, Defendant – in a pique of anger at Plaintiff's refusal to commit to immediately

buy Dietl a Rolex watch – sent Plaintiff a photo of the December 2004 Note and wrote: "You forgot you gave me this [*i.e*., the Note] after I gave you 250k." But Defendant never lent, or gave, *a dollar* to Plaintiff or to Resource Search Co. Yet his text reveals that Defendant acutely understands that must allege that the Note was supported by *some* form of consideration running from him to Plaintiff in order to make a claim under the Note. But the law and procedure in this Court – including Rule 11 of the Federal Rules of Civil Procedure – forbids Defendant from continuing to make false and utterly frivolous allegations of purported fact, such as the above, in supposed of his claim.

35. At present, even if the December 2004 Note were enforceable, and it is not, Plaintiff would have no present obligation to pay Defendant anything, because Research Source Co. has not, in fact, been sold, nor is it subject to any purchase and sale agreement or imminent purchase and sale agreement. In addition, Plaintiff is 15 or so years younger than Defendant, is still growing his business and has no plans whatsoever to sell Research Source Co. in the foreseeable future. But it is certainly possible that one day in ten or 20 years from now, Plaintiff may, in fact, wish to sell Research Source Co. and that Defendant or a representative of Defendant's estate would then claim a right to participate in the proceeds of sale under the Note. These facts establish that there is an actual, present and justiciable controversy between the parties.

36. In addition, Dietl's lawyer's demand letter dated July 22, 2021 (Exhibit A) establishes that there is an actual, present and justiciable controversy between the parties.

37. Under 28 U.S.C §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure, a person may seek a declaratory judgment where doing so would afford litigants an opportunity to obtain both clarity in their legal relationships and to make responsible decisions about their future. *Steffel v. Thompson*, 415 U.S. 452, 471 (1974).

38. As alleged above, and as set forth in Exhibit A hereto, an actual, definite and concrete dispute exists between the parties, affecting the parties' adverse legal interests with sufficient immediacy as to justify relief. In particular, Defendant, who will be 71 in December 2021, claims that the Note is enforceable, whereas Plaintiff, who is just 56, claims it is unenforceable. Each is entitled to know, with certainty, for planning purposes, what their respective rights and obligations are, if any, under the Note. This dispute is thus not merely hypothetical, abstract or academic, but is ripe for resolution. *Duane Reade Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005) ("In order to decide whether to entertain an action for declaratory judgment, we have instructed the district courts to ask: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty.").

39. In addition, a further dispute has arisen between the parties in their discussions concerning the December 2004 Note. While Plaintiff strenuously contends that the Note is unenforceable for the reasons pled above, Plaintiff secondarily contends that if he is somehow wrong and the Note is enforceable, Defendant would not be entitled to 5% of the gross proceeds of any sale of Resource Search Co., but only to a fraction of that. The reason is that the parties intended, at the time of contracting, that the *second* sentence of the note – referring to Defendant's entitlement to a "pro rata" share – was to modify the reference in the *first* sentence to 5% of the company "at the sale." Thus, if the equity value of a 5% stake in the company were diluted after December 6, 2004 – and it was, *significantly* -- any participation by Defendant in the sale proceeds would be reduced pro rata from 5% as well (the "*Pro Rata* Limitation"). Defendant has claimed that Plaintiff's construction of the Note in this regard is erroneous. Thus, in the unlikely event that the Court concludes that none of the defenses to the enforcement of the Note discussed

above is well-taken, Plaintiff seeks declaratory relief in the alternative, *i.e.*, that Defendant's right to proceeds on any sale of Research Source Co. is subject to the *Pro Rata* Limitation or, if it is not, that the Note is void for vagueness. *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (the standard for ripeness in a declaratory judgment action is that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.").

**Reservation of Rights**

40.    As noted above, in and since May 2021, Defendant has engaged in a concerted effort to extract a value from Plaintiff to which he, Defendant, has no legal entitlement.

41.    First, as noted above, on May 11, 2021, Defendant sent Plaintiff a photo of the Note and wrote: "You forgot you gave me this [*i.e.*, the Note] after I gave you 250k."

42.    The suggestion that Plaintiff gave Defendant the Note in consideration of a payment of $250,000 – or any other amount – was a sheer fabrication. Defendant never gave Plaintiff any money or thing of value for the Note, aside from what certainly appeared to be a serious promise to generate substantial revenues for Resource Source Co., *i.e.* something that Defendant never did.

43.    In addition, Defendant has never lent or given money to Plaintiff, at any time, on, before or after December 6, 2004.

44.    Defendant thereafter sent other harassing texts. For example, in one text, Dietl wrote: "… you don't stand by what you say. Mark I'm glad I have a stake in our company".

45.    In another text, Defendant wrote: "Ok partner. Keep bringing Our Revenues Up. You will hear from my Corporate attorney."

46. In a third text, Defendant wrote: "I can't believe your [sic] not my friend. Mark it's only money. Why get So mad?"

47. In a fourth text, Defendant wrote: "There is no threat. I know what I have."

48. Finally, in his most recent and perhaps most harassing text, Defendant stated: "Hey Mark I started my investigation. I interviewed 4 of your former Friends and associates of RSC. Wow this is getting interesting. You did some Bad things. You told me your [sic] not my Friend. Fine."[2]

49. Because they are false, and because they seek something to which Defendant is not legally entitled, the foregoing texts are manifestly a form of harassment. While, at present, the complaint herein seeks only declaratory relief, if these texts continue (and/or if Defendant engages in other, comparable damaging conduct), Plaintiff reserves the right to amend his complaint herein to seek injunctive relief to enjoin Defendant from engaging in such conduct and/or for damages for improper conduct.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

(a) Enter a declaratory judgment that any purported agreement reached by the parties, on or about December 6, 2004, concerning the sale of Resource Source Co., is unenforceable;

(b) Enter a declaratory judgment that the December 2004 Note is unenforceable;

(c) If the Court cannot grant the above relief, enter a declaratory judgment holding that the Note is subject to the "*Pro Rata* Limitation," as pled in ¶ 39 above, or, if it is not, that the Note is void for vagueness; and/or

---

[2] Where Mr. Dietl used capitalized letters in his texts, we have done so as well.

(d) Award Plaintiff all such other and further relief as this Court deems just and proper.

Dated: July 30, 2021

AKABAS & SPROULE

By: ___*David Edgar Bamberger*___
    David Edgar Bamberger (DB 1285)
    Of counsel
488 Madison Avenue, Suite 1120
New York, New York 10022
Telephone (212) 308-8505
Email dbamberger@akabas-sproule.com

*Attorneys for Plaintiff Mark Arzoomanian*